# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEHIGH VALLEY PROPERTIES, INC.,** et al. | : CIVIL ACTION :  |
| v. | : NO. 19-4892 : |
| **PORTNOFF LAW ASSOCIATES, LTD.,** et al. | : : |

## MEMORANDUM

**SCHMEHL, J.  /s/ JLS**                                                                                   **APRIL 27, 2020**

Plaintiffs brought this action *pro se* under 42 U.S.C. §1983 and the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§1961-1968, claiming that the Defendants' methods in collecting allegedly delinquent school property taxes from Plaintiffs violated their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment (Count One), violated RICO (Count Two) and violated the Pennsylvania Constitution (Count Three). After the Defendants filed motions to dismiss based on, *inter alia*, the Tax Injunction Act ("TIA"), 28 U.S.C. §1341, the Plaintiffs filed an Amended Complaint in which they asserted the same three counts, but deleted most references to school taxes and instead challenged the Defendants' methods in collecting penalties, interest and attorney's fees.[1]  Plaintiff seek injunctive relief and an award of damages. Once again, all the Defendants have filed motions under Fed. R. Civ. P. 12(b)(1) to dismiss this action for lack of subject-matter jurisdiction as barred by, *inter*

---

[1] After Defendant Portnoff Law Associates filed a Motion to Dismiss the Amended Complaint, Plaintiffs filed a Second Amended Complaint asserting essentially the same claims, but adding two new Defendants, Allentown School District and Robert Daday, Esq.  Defendants Robert Daday and Portnoff Law Associates have filed a motion to strike the Second Amended Complaint. These Defendants claim that the Second Amended Complaint was filed in violation of Fed. R. Civ. P. 15(a)(2) because it was filed without either first seeking leave of court or the consent of the Defendants. The Court agrees. In addition, because as discussed, *infra*, any amendment would be futile, the Court will strike the Second Amended Complaint.

*alia*, the TIA and the principle of comity[2]. For the reasons that follow the motions will be granted.

In considering a motion to dismiss under Rule 12(b)(1), the Court must first determine whether Defendants allege a facial or factual deficiency. See *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack concerns "'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites.'" *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (quoting *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). Because Defendants do not challenge the facts asserted in the Amended Complaint but, instead, focus on arguing that Plaintiffs' claims fail to satisfy jurisdictional requirements as a matter of law, Defendants have launched a facial attack on subject-matter jurisdiction.

Courts adjudicating facial attacks under Rule 12(b)(1) use the same standard of review as used for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Schuchardt v. President of the United States*, 839 F.3d 336, 344 (3d Cir. 2016). Accordingly, the Court must determine whether the pleadings, on their face, adequately allege subject-matter jurisdiction. *Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).* Courts must consider only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* The Court must accept all of a plaintiff's plausible allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 343. However, "[c]onclusory

---

[2] Defendants also argue that this action is barred by the *Rooker-Feldman* doctrine. Since the TIA and comity challenge is dispositive, the Court will not address the *Rooker-Feldman* argument.

assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* at 346–47.

Plaintiff, Lehigh Valley Properties ("LVP"), owns real property located at 901-933 N. Ivy Street in the City of Allentown ("Ivy Street Property"). Am. Compl. at ¶ 8. Plaintiffs, Dennis and Laurie Atiyeh, own real property located at 5828 Park Valley Road in Schnecksville ("Park Valley Property"). Am. Compl. at ¶ 7. Plaintiffs allege that Defendants have contended that Plaintiffs owe past due school taxes and that "Defendants are now seeking to collect penalties, interest and fees which are not taxes." Am. Compl. at ¶ 11. According to Plaintiffs, Defendant Portnoff Law Associates, LTD. ("Portnoff") was engaged as an "agent" by Defendants Parkland School District ("Parkland") and Northern Lehigh School District ("Northern Lehigh") for "collecting taxes at their behest and on their behalf." Am. Compl. at ¶ 10. Plaintiffs allege that in addition to actual taxes, Portnoff also adds penalties, interest and fees and seeks to collect those sums as additional taxes. *Id.* Plaintiffs allege that Defendants have refused and failed to respond to Plaintiffs' requests to "provide of the accuracy and validity of the alleged past due school taxes (which are not taxes but rather penalties, interest and fees)" and have "continually change[d] the amount allegedly owed," notwithstanding that Plaintiffs allegedly made a $48,000 payment. Am. Compl. at ¶ 12.

In Count One of their Amended Complaint, Plaintiffs allege that Defendants repeatedly levied school taxes upon the entire North Ivy Street Property owned by LVP and refused to reduce the assessed taxes on said property despite the fact that the City of Allentown has condemned approximately one-third of that property. Am. Compl. at ¶ 17. Plaintiffs allege that the taxes paid by them are evidenced by Exhibit 1 attached to

**3**

their complaint. Am. Compl. at ¶ 12. However, no such exhibit is attached to either the Amended Complaint or the original Complaint. Plaintiffs allege that Portnoff continually attempted to sell the North Ivy Street property through Sheriff sales in order to collect penalties, interest and attorney's fees that LVP had already paid and that Portnoff knew were incorrect. Am. Compl. at ¶¶ 18-19. In doing so, Portnoff allegedly acted as "agent and alter ego" of Parkland and allegedly acted with malice toward LVP by "singl[ing] out Plaintiff for 'special treatment'…without allowing for any due process under the United States Constitution." Am. Compl. at ¶¶ 20-21. Plaintiffs also allege that Portnoff, as agent and alter ego for Parkland, has scheduled Sheriff's sales of Plaintiffs' Park Valley Road property despite Plaintiffs' requests that they be supplied with an accurate accounting of the penalties, interest and attorney's fees levied and payments made. Am. Compl. at ¶¶ 28, 30. According to Plaintiffs, Portnoff "has failed to follow the proper procedures for collecting the school taxes and instead is now using the auspices of that law to collect penalties, interest and attorney's fees and had purposely ignored Plaintiffs (sic) requests for information." Am. Compl. at ¶ 31. Plaintiffs allege that Portnoff has violated Plaintiffs' constitutional rights by refusing to provide them with proof that the money collected was used to pay the Northern Lehigh school taxes and not for Portnoff's benefit. Am. Compl. at ¶ 33.

Plaintiffs further allege in Count One that Portnoff "inflates each school tax bill for its own gain . . . so that the only party that receives money is Portnoff" and that Plaintiffs have requested to enter into a payment plan to resolve unpaid penalties, interest and attorneys' fees but Portnoff has refused to do so. Am. Compl. at ¶¶ 36-37. Plaintiffs assert that Defendants' actions violated the Fourteenth Amendment by taking Plaintiffs'

property without the proper due process and treating Plaintiffs unequally under the law. Am. Compl. at ¶¶ 23, 25. In their prayer for relief for Count One, Plaintiffs request an award of all "penalties, interest and attorney's fees incorrectly applied" and actual damages of more than $200,000 plus reasonable fees, costs and expenses with interest. Plaintiffs do not allege that a Sheriff's sale actually took place or that Plaintiffs were ever deprived of their Properties.

Count Two of the Amended Complaint asserts a civil RICO claim. Plaintiffs allege that Defendants "engaged in a pattern of illegal activities in the collection of penalties, interest and attorney's fees wherein Defendant Portnoff is improperly collecting school taxes from Plaintiffs and other [sic] and then failing to remit all money collected and instead applying that money to penalties, interest and attorney's fees." Am. Compl. at ¶ 42. Plaintiffs allege that Defendants' failing to remit Plaintiffs' school taxes, refusing to provide Plaintiffs with an "accounting of how the school taxes penalties, interest and attorney's fees were applied, blocking Plaintiffs from selling portions of their property and crops, refusing to allow Plaintiffs to enter into a payment plan and filing multiple court actions against Plaintiffs to harass and demean them constitutes a pattern of racketeering activity for the purpose of defrauding Plaintiffs. Am. Compl. at ¶ 44. Plaintiffs assert that pursuant to this allegedly fraudulent scheme, Defendants committed multiple related acts to defraud Plaintiffs and illegally seize their land without due process. Am. Compl. at ¶ 45. In their prayer for relief for Count Two, Plaintiffs seek treble damages, fees, costs "and an Order preventing Defendants from placing any of Plaintiffs' property for Sheriff's sale pending a true and accurate accounting of all sums received from Plaintiffs and a disposition of those funds."

In Count Three of the Amended Complaint, Plaintiffs claim that Defendants' actions have violated Plaintiffs' rights "under the Pennsylvania Constitution." See Am. Compl. at ¶¶ 49-52. Count Three incorporates by reference the allegations already set forth in the Amended Complaint. Am. Compl. at ¶ 49. Plaintiffs further allege that Defendants are "engaged in a pattern of harassment and illegal taking of Plaintiffs' property" and that Plaintiffs have been "greatly harmed … in that their properties are now diminished in value." Am. Compl. at ¶¶ 51-52. In its prayer for relief, Count Three seeks "an award of all taxes incorrectly applied" and "actual damages in excess of $200,000" plus "Plaintiffs (sic) reasonable fees, costs and expenses together with interest."

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA is "first and foremost a vehicle to limit drastically federal court jurisdiction to interfere with so important a local concern" as taxation. *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). Indeed, the "moorings" of the TIA can be found in state revenue protection. *Hibbs v.* Winn, 542 U.S. 88, 106, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004). "Although the express language of the Tax Injunction Act only refers to injunctive actions, the Supreme Court has held that the Tax Injunction Act also prohibits federal courts from issuing declaratory judgments holding state tax laws unconstitutional." *Gass v. County of Allegheny, PA.,* 371 F.3d 134, 136 (3d Cir.2004) citing *California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982); *See also Dommel Properties, LLC v. Jonestown Bank and Trust Co.,* 2013 WL 1149265, *6 (M.D. Pa. March 19, 2013).

Besides the TIA, the United States Supreme Court has held that "[t]axpayers are barred by the principle of comity from asserting § 1983 actions [for damages] against the validity of state tax systems in federal courts" if a "plain, adequate, and complete" remedy is available in state court. *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 107, 115-16, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). The principle of comity is actually broader in scope than the TIA "because it restrains federal courts from hearing not only cases that decrease a state's revenue, but also those that 'risk disrupting state tax administration.'" *Joseph v. Hyman*, 659 F.3d 215, 218 (2d Cir.2011) (quoting *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010), 130 S.Ct. 2323). As a result of the TIA and the Supreme Court's decision in *McNary*, "a federal court cannot entertain a suit posing either an equitable or a legal challenge to state or local taxes ... if a sufficient remedy ... is available in state court." *Kerns v. Dukes, 153 F.3d 96, 101* (3d Cir.1998).

The only equitable request Plaintiffs make in their Amended Complaint is for "an Order preventing Defendants from placing any of Plaintiffs' property for Sheriff's sale pending a true and accurate accounting of all sums received from Plaintiffs and a disposition of those funds." This request is made in Count Two (RICO).

In order to decide whether this equitable relief is barred by the TIA, the Court must first consider "if the effect of the plaintiffs' lawsuit is to challenge the "assessment, levy or collection" of a "tax." *Dommel Properties, LLC,* 2013 WL 1149265, at *6. Even if the Court decides that the Plaintiffs are challenging the collection of a tax,

**7**

the Court must then decide whether Plaintiffs have a plain, speedy and efficient remedy available in state court before the Court can conclude it is divested of jurisdiction by the TIA.

Plaintiffs argue that this action is not barred by the TIA or the principle of comity because they now have deleted many of the references to taxes from their original Complaint and are only challenging Defendants' methods in collecting "penalties, interest and attorney's fees" which, they contend, are not covered by the TIA or the principle of comity. The Court does not agree.

The plain language of the TIA's jurisdictional limitation is not focused on taxes only, but rather the broader activities of assessing, levying, and collecting taxes. Our Court of Appeals instructs that the term 'tax' in the TIA should be interpreted broadly for purposes of determining federal jurisdiction. *Behe v. Chester County Bd. of Assessment Appeals*, 952 F.2d 66, 68 (3d Cir. 1991).

Under Section 1 of the Pennsylvania Municipal Claims and Tax Liens Acts, 53 P.S. §§ 7101 et seq. ("MCTLA"), "taxes" are defined as "any county, city, borough, incorporated town, township, school, bridge, road, or poor taxes, **together with and including all penalties, interest, costs, charges, expenses and fees, including reasonable attorney fees,** as allowed by this act and all other applicable laws." 53 P.S. § 7101. (emphasis added.) Further, Section 2 of the MCTLA provides that

> [a]ll taxes ... lawfully imposed or assessed on any property in this Commonwealth, and all taxes heretofore lawfully imposed or assessed by any municipality on any property in this Commonwealth ... shall be and they are hereby declared to be a first lien on said property, **together with all charges, expenses, and fees added thereto for failure to pay promptly;** and such liens shall have priority to and be fully

8

> paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation....

53 P.S. § 7103 (emphasis added). Finally, Section 3(a) of the MCTLA provides that

> [a]ll ... taxes, tax claims and tax liens which may hereafter be lawfully imposed or assessed on any property in this Commonwealth **... [include] all charges, expenses, and fees incurred in the collection of any delinquent account, including reasonable attorney fees** under subsection (a.1), added thereto for failure to pay promptly....

53 P.S. § 7106(a) (emphasis added). Thus, the MCTLA expressly provides for inclusion of interest, penalties and attorney's fees associated with the collection of delinquent taxes as taxes.

Indeed, in *Washington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP*, 338 F.3d 442 (5th Cir. 2003), the Court of Appeals for the Fifth Circuit upheld the district court's dismissal under the TIA of the plaintiff's constitutional challenge to the City of New Orleans' imposition of a thirty percent collection penalty as collection costs for a law firm and collection agency in collecting delinquent *ad valorem* taxes. The Fifth Circuit observed that the TIA "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems," and found that the collection penalty "is inexorably tied to the tax collection itself, which sustains the essential flow of revenue to the government." *Id.*, 338 F.3d at 444 (internal quotations and citations omitted). The Court went on to conclude that since "the plain language of the Tax Injunction Act's jurisdictional limitation is not focused on taxes only, but rather the broader activities of assessing, levying, and collecting taxes," the plaintiff's challenge to the penalty was barred by the TIA. *Id.*

Likewise, because the penalties, interest and attorney's fees Plaintiffs seek to challenge here are clearly "inexorably tied" to the tax collection process itself and are indeed repeatedly included in the definition of "taxes' by the MCTLA, Plaintiff's request for equitable relief arising from their challenge to the methods of collecting such penalties, interest and attorney's fees is barred by the TIA. Any attempts to separate the collection of these items from the taxes themselves would interfere with the levy and orderly collection of taxes by municipalities and school districts—the very type of activity the TIA aims to prevent. *Hibbs*, 542 U.S. at 106.

As for Plaintiff's damages claims asserted in their section 1983, RICO and claims under the Pennsylvania Constitution, the Court, for the reasons stated, *supra*, finds all such claims for damages are barred by the principle of comity. The Court adds that Plaintiffs' challenge to the methods of the Defendants in collecting penalties, interest and attorney's fees disrupts the administration of taxes by the state under the principle of comity. It is quite unlikely that a law firm such as Defendant Portnoff will want to represent school districts and municipalities in the collection of taxes if the firm could be potentially liable for monetary damages in federal court under section 1983 or RICO.

Therefore, this Court lacks jurisdiction to consider Plaintiffs' claims unless the available state remedies are not plain, speedy and efficient[3]. *Gass*. 376 F. 3d at 136; *Dommel Properties, LLC* , 2013 WL 1149265, *7(citations omitted).

The MCTLA allows Pennsylvania property owners such as Plaintiffs to challenge the imposition of tax liens against their properties and also provides the

---

[3] "There is 'no significant difference' between the 'plain, speedy and efficient' standard set forth in the Tax Injunction Act and the 'plain, adequate and complete' standard governing comity." *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989) (quoting *McNary*, 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8).

**10**

property owner with the ability to raise all defenses. See 53 P.S. §§ 7182, 7184. As explained by the Commonwealth Court in *Penn Township v. Hanover Foods Corp.,* 847 A.2d 219 (Pa. Cmwlth. 2004): [A]fter a municipal claim is filed, three procedural alternatives are available to the parties: (1) the owner may contest the municipal claim or the amount of assessment by filing and serving a notice on the claimant municipality to issue a writ of *scire facias*, thereby forcing a hearing on the municipal claim; (2) the municipality may pursue a writ of *scire facias* without the owner's action; or (3) the owner and the municipality may choose not to do anything, thereby letting the municipal lien remain recorded indefinitely subject to revival of the lien in every twenty years upon the issuance of a suggestion of nonpayment and an averment of default. *Id.*, 847 A.2d at 224 (quoting *Borough of Ambler v. Regenbogen*, 713 A.2d 145, 148 (Pa.Cmwlth.1998)). *See also Pentlong Corp. v. GLS Capital, Inc., 573 Pa. 34, 820 A.2d 1240, 1247 (Pa. 2003.)* In addition, the MCTLA, including its *scire facias* remedy under § 7184, constitutes a "plain, speedy and efficient remedy" for purposes of the TIA. *Christian Street Pharmacy v. City of Philadelphia, 2009 WL 2137204, at \*2-3 (E.D. Pa. July 15, 2009.)*

        In addition, our Court of Appeals has held that "Pennsylvania provides a 'plain, adequate and complete' remedy for § 1983 Plaintiffs challenging state taxation policies." *Gass* 376 F. 3d at 138. The state courts do not have to provide a favorable outcome for a plaintiff's claims. *Gass*, 376 F. 3d at 139. Rather, the state courts must provide the taxpayer with "a full hearing and judicial determination of the controversy," *id.,* and "a fair opportunity to challenge the accuracy and legal validity of their tax obligation." *Berne Corp. v. Government of The Virgin Islands,* 570 F.3d 130, 137

(3d Cir.2009) (quoting *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 39, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)**).**

Pennsylvania courts also can provide adequate remedies for Plaintiff's claims for damages under both Section 1983 and RICO. See *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("[S]tate courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."); *Drohan v. Sorbus, Inc.*, 401 Pa. Super. 29, 37, 584 A.2d 964, 968 (1990).[4] Principles of comity, as articulated in case law, therefore bar this Court from exercising jurisdiction over Plaintiff's claims for compensatory and punitive damages under section 1983, RICO and the Pennsylvania Constitution arising out of the collection of state taxes.

In short, the Plaintiffs are requesting that a federal court intervene in the local matter of tax administration. Unfortunately for Plaintiff, the TIA and the principle of comity prevent the Court from doing so.

---

[4] In order to do so, the Plaintiffs must first establish the absence of an adequate remedy at state law. *See Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n,* 515 U.S. 582, 592, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *Kowenhoven v. County of Allegheny,* 587 Pa. 545, 901 A.2d 1003, 1015 (Pa. 2006).